DAVID BRADLEY & COMPANY, Appellants, v. A. L. HOPKINS AND W. W. HOPKINS, Defendants, and BAKER & BISSELL, *et al.*, Interveners, and THE RECTOR & WILHELMY COMPANY v. A. L. HOPKINS & SON, *et al.*, Defendants, and BAKER & BISSELL, *et al.*, Interveners, Appellants.

General Assignment with Preferences: WHERE CHATTEL MORTGAGE IS NOT. Defendants, who were dealers in hardware and machinery, executed a chattel mortgage on their stock, and assigned accounts, in all valued at three thousand three hundred dollars, securing all their creditors but three, and covering three thousand three hundred dollars out of a total indebtedness of three thousand seven hundred dollars. They were not insolvent, but had property of the value of one thousand one hundred and fifty dollars remaining. They did not intend going out of business, but expected to continue untill the mortgage was paid. The creditors had no knowledge of the mortgage when it was executed, but most of them ratified it afterward. *Held*, that the transaction did not constitute a general assignment.

VOL. 98 Ia—20

*Appeal from Woodbury District Court.*—HON. SCOTT M. LADD, Judge.

MONDAY, MAY 18, 1896.

THESE are actions at law, brought by the plaintiffs, respectively, to recover judgments against the defendants, on accounts, and upon certain promissory notes. Attachments were sued out in each case, and levied upon a stock of merchandise as the property of the defendants. Baker & Bissell, and nineteen other creditors of the defendants intervened, claiming said merchandise by virtue of a chattel mortgage, executed to them and the plaintiffs, by the defendants. They allege, that said plaintiffs were parties to said mortgage, which provided, that they should receive payment from the property described therein; that, prior to the levy of their attachments, plaintiffs each had actual notice of said mortgage, and had accepted said mortgage after having full knowledge of its terms. Plaintiffs, in answer to said petitions of intervention, denied that said mortgage was ever executed and delivered by the defendants, to the interveners or to plaintiffs, or that plaintiffs ever accepted the same. They allege that, in the making of said chattel mortgage, the defendants made a general assignment of all their property for the benefit of their creditors, with preference therein to certain creditors, and that by reason thereof said mortgage is void as to the plaintiffs, and that, in making the same, the defendants intended thereby to cheat and defraud their creditors, wherefore said mortgage is void. Interveners. in reply denied that said mortgage constituted a general assignment for the benefit of creditors, and that the same included all the property of the defendants. They allege that said mortgage was given to secure *bona fide* indebtedness,

from the defendants to interveners. As the cases involve the same questions, except as to one question of fact, they were submitted together on the issues between plaintiffs and interveners, and are so submitted on this appeal. A jury was waived in the court below, and the court found that the mortgage was, in fact, a general assignment of the defendants for the benefit of their creditors, that defendants were at the time insolvent, and that said assignment was not made for the benefit of all their creditors. The court further found that the plaintiffs and appellants, David Bradley & Co., had fully accepted the security given by said mortgage, in common with the interveners, and were therefore estopped from claiming any rights to the property, superior to the right of interveners by virtue of their attachment, and adjudged that the attachment of David Bradley & Co. be discharged, and that interveners have judgment against said plaintiffs for the costs. David Bradley & Co. excepted to all of said findings, and interveners excepted to so much as found that the mortgage constitutes a general assignment. David Bradley & Co. appeal. The court further found that the plaintiff, Rector & Wilhelmy Company, did not accept the security given by said mortgage, but refused to accept the same, and that they are not bound thereby, and as to said plaintiff, said mortgage is void and of no effect. It was adjudged that said plaintiff's lien, by virtue of its attachment, is senior and superior to any lien of the interveners by virtue of said mortgage, and that interveners pay the costs occasioned by the trial of the facts between them and said Rector & Wilhelmy Company, to all of which interveners and the defendants excepted, and from which interveners appealed.—*Affirmed* on appeal of David Bradley & Co. *Reversed* on appeal of interveners.

*Wright, Hubbard & Bevington* and *Wright & Baldwin* for appellants.

*Miller & Edmunds* and *Flickinger Bros.* for appellees.

GIVEN, J.—I.   The undisputed evidence in these cases shows that on and for some time prior to July 3, 1893, A. L. Hopkins & Son were engaged in the hardware business in the town of Anthon, Iowa, and were on said day indebted to the plaintiffs and to the interveners in these actions, and to other persons. On that day William C. Miller, of the law firm of Miller & Edmunds, of Correctionville, Iowa, went to Anthon, as requested in a telegram from Hopkins & Son. Mr. Miller prepared, and Hopkins & Son executed and acknowledged, the mortgage in controversy, and the same was then delivered to Mr. Miller, he saying that he would act for the creditors.   The mortgage is upon "all of our stock of hardware, tinware, barbed wire, implements, pumps, binder twine, stoves, fixtures, and tinner's tools, it being intended to include in this property, all property of every description owned by us and used in connection with our hardware business, in the town of Anthon, Iowa," located in a building described.   Said mortgage was conditioned to secure each of these plaintiffs and interveners, respectively, in amounts due them as stated, in the order in which their names appear in the mortgage.   The mortgage was taken by Mr. Miller, and on the next day, July 4, his firm telegraphed to each of said mortgagees, of the action taken, and received replies from each intervener, ratifying and approving the taking of said mortgage in their behalf.   There is a dispute as to whether or not the plaintiffs ratified said action. On the fifth day of July, Miller & Edmunds, acting as attorneys for the mortgagees, took possession

of said mortgaged property under the mortgage, and, on the seventh day of July, filed said mortgage for record. On the tenth day of July, David Bradley & Co. commenced this action, and caused an attachment to issue against the property of the defendants, which was levied upon all said mortgaged property, on the eleventh, and possession taken thereof under the levy. On the seventeenth day of July, the plaintiff, Rector & Wilhelmy Company, commenced their action, and caused their attachment to be levied upon the same property, then in the hands of the sheriff.

II. The chattel mortgage in question was executed and delivered to Mr. Miller, and was received by him without the knowledge of, or authority from any of the persons named therein as mortgagees. It is not questioned but that, under the law, such of said persons as thereafter, with knowledge of the facts, ratified said acts, and accepted said mortgage, are estopped from proceeding against the mortgaged property by attachment. The first question to be determined is whether either of the plaintiffs did, with knowlege of the facts, ratify and accept said mortgage. We first inquire as to the plaintiffs David Bradley & Co. The mortgage was executed and delivered to Mr. Miller on July 3, 1893, and on July fourth he telegraphed Bradley & Co., as follows: "Have taken chattel mortgage from A. L. Hopkins & Son, Anthon, Iowa, for your claim, eight hundred and thirty-eight dollars and eighty-six cents. Mortgage includes other claims. Wire approval of our action." Interveners claim that on July 4, Bradley & Co. sent a reply by wire, which Miller received, approving his acts in taking said mortgage, and Bradley & Co. deny having sent any reply by wire. We have before us the original message which Miller testifies was delivered to him at Correction-ville, on July 4. There is a dispute as to

the correct reading of this message. We think it is as follows: "Telegram received for approval of your taking chattel mortgage from A. L. Hopkins & Son, to secure us. Write us particulars." The contention is that it reads: "Telegram received and approved of your taking chattel mortgage." We do not think it so reads. We are inclined to think this message was sent by Bradley & Co., but, as we read it, it is not a ratification of the act of Miller in taking the mortage. On the morning of July 5, Mr. G. W. Cherrington, a collecting agent for Bradley & Co., reached Correctionville, and went from there, in company with Mr. Miller, to Anthon, where he remained some time. It is claimed by interveners, and correctly so we think, that Mr. Cherrington had authority from David Bradley & Co. to collect money and to accept security on debts to the company. There is some evidence tending to show that securities taken by Mr. Cherrington were subject to the approval of the company, but we are in no doubt but that, as to the claim against Hopkins & Son, he was authorized to act upon his own judgment. Mr. Cherrington complained to Miller that Bradley & Co. were next to the last ones to be paid under the mortgage, and expressed a desire to get additional security, which he did. Hopkins & Son turned over to him as collateral a lot of notes which Bradley & Co. still hold, and gave him an order on a bank, which was accepted, for any surplus that might remain of collaterals held by the bank. The weight of the evidence is in favor of the conclusion that, with authority so to do, Mr. Cherrington ratified and accepted the mortgage security on July 5, for David Bradley & Co., and that said company acquiesced therein.

III. The question whether the plaintiff, Rector & Wilhelmy Company, accepted the mortgage, must be determined from the following correspondence: On July 4, Miller telegraphed said company as follows:

"We have taken security from A. L. Hopkins & Son, Anthon, Iowa, for your claim of $555.23. Wire approval of our action." This was answered on the same day, by wire, as follows: "Your action O. K. Please mail full particulars." July 5, Miller wrote as follows: "On the night of the 3d inst. we took chattel mortgage on the stock of Hopkins & Son, of Anthon, Iowa, and wired you to that effect yesterday. There are twenty-three creditors named in the mortgage, and the total amount covered by it is a little over $3,281. In taking the mortgage they asked to prefer creditors, which has been done, and under its terms you are to be paid first. We go to Anthon to-day to commence invoicing the stock, and will realize for you soon as possible." On the same day, and before the receipt of the letter of Miller, but after the receipt of said telegram, Rector & Wilhelmy Company wrote them as follows: "We are in receipt of your message, with statement of security of our claim against A. L. Hopkins & Son, Anthon, Iowa. You say $552.23, though our account appears to be, as per statement inclosed, $574.98, to which we replied, saying the matter was O. K., and asking for a full statement of the security in the case. We regret, and are somewhat surprised to know of, the financial difficulty of Messrs. Hopkins & Son, as we were not aware that such a step as this would appear to be necessary. Be kind enough to furnish us statement of the way the matter stands, what our security is, and what are the prospects for realizing the claim, and very much oblige." To this letter, which must have been received on the sixth, Miller made no reply, probably relying on his letter of the fifth as containing the information called for. On the fifth day of July, Mr. Miller, without further information from this plaintiff than that contained in said telegram, took possession of the mortgaged property on behalf of the mortgagees, and

on the seventh, and after the receipt of plaintiff's letter of the fifth, filed the mortgage for record. There was no further communication until July 15, when this plaintiff wrote to Miller as follows: "We have no reply to our letter asking for statement and copy of mortgage of Hopkins to Rector & Wilhelmy Co. *et al.*, and only to-day obtained copy of mortgage, from which we learn the way in which it is drawn. We are surprised at this, for it is nothing more nor less than an assignment with preference, and this, under Iowa's law, we understand to be void. In order to protect ourselves, we are forced to go in as attaching creditors, which we do, and ask you to return Hopkins' note to him, and not act further for us in the case." The question is whether this plaintiff, with knowledge of the facts, ratified the taking of this mortgage in its behalf. By the telegram from Miller, it was simply informed that he had taken security, without any mention of the kind of security. Had plaintiff known the facts, surely the answer, "Your action O. K.," would evidence an approval; but, based as it was, upon no other information than that security had been taken, and coupled with a request for "full particulars," we think that telegram cannot be construed as an acceptance of the mortgage. The same is true as to plaintiff's letter of July 5, as that was written before the receipt of Miller's letter of the same date. That letter shows quite clearly that plaintiff desired full information before accepting or rejecting the security which Miller had taken. After the receipt of Miller's letter of July 5, which did convey substantially all the facts, plaintiff neither said nor did anything that is claimed to be an acceptance of the mortgage, but on the fifteenth, after a copy of the mortgage was procured, expressly repudiated it.

IV. The remaining contention is whether the court erred in finding that said chattel mortgage was in fact a general assignment for the benefit of creditors. In *Bank v. Crittenden*, 66 Iowa, 240 (23 N. W. Rep. 646), it is said: "It is settled by the cases that the question whether such conveyance should be regarded as an assignment for the benefit of creditors, or a mortgage for the security of particular debts, is to be determined by the intention of the parties, as it may be ascertained from the circumstances of the transaction. If the conveyance is to a trustee, and the debtor intends to divest himself, not only of the title to the property, but of all control over it; if it is intended as an absolute conveyance of all his property and is made for the purpose of securing a distribution of its proceeds among his creditors, or a portion of them,—in legal effect, it is an assignment for the benefit of creditors, no matter what name or designation the parties may have given it. On the other hand, if the intention of the debtor is merely to secure his debt to one or more of his creditors, and the conveyance is not intended as an absolute disposition of his property, but he reserves to himself a right therein, the conveyance will be treated as a mortgage, even though the debtor is insolvent at the time, and it covers all his property, and but a portion of his debts are secured by it." Looking to the circumstances of the transaction to ascertain the intention of the defendants, we find that they were not in fact insolvent at the time they executed this mortgage. The evidence shows that the stock of merchandise covered by the mortgage was worth two thousand six hundred and fifty dollars, and that they had accounts to the amount of six hundred and ninety-six dollars, notes amounting to between one thousand dollars and one thousand five hundred dollars, and other property worth at least

one hundred and fifty dollars. Allowing for all the depreciation warranted by the evidence, the assets, we think, were fully worth four thousand four hundred and fifty dollars. The indebtedness provided for in the mortage is three thousand two hundred and eighty dollars, and the claims of the three creditors not included therein, amounted to four hundred and twenty dollars, making a total indebtedness of about three thousand seven hundred dollars. Parlin, Orendorf & Martin are said to be creditors to the amount of one thousand three hundred dollars, but this charge was for goods sent to be sold on commission, but little, if any, of which has been sold. Said goods were not in the building where the mortgaged property was kept, and were not included in the mortgage, nor do we include them in our estimate of the assets. They belong to Parlin, Orendorf & Martin. We do not think the defendants were in fact insolvent, nor do we think they executed the mortgage believing themselves to be insolvent, or in contemplation of insolvency. They testified that they expected, at the time they gave the mortgage, to continue the business, and to be able to pay their creditors in a few weeks, and in this they are corroborated by the circumstances. True, W. W. Hopkins testified that, when Mr. Miller came to take possession for the mortgagees who had ratified the mortgage, they turned over all the property to Miller except the notes, horse, wagon, and buggy, and closed their doors so far as they were concerned, and quit business. This, it will be observed, was on the day that Mr. Miller demanded possession on behalf of the creditors, and not on the day when the mortgage was executed. Another fact, showing the intention of the defendants is, that they did not include all their property in the conveyance, but withheld therefrom said notes, accounts, and other property, worth some one thousand five hundred

dollars. When the mortgage proper, was taken from them, they turned over to Mr. Miller the six hundred and ninety-six dollars in accounts, for the benefit of the creditors, and gave to plaintiffs Bradley & Co., two hundred and ninety dollars of said notes, and an order on the bank for any surplus that might remain from four hundred dollars of said notes pledged as collateral for two hundred dollars, as further security to Bradley & Co. Only three creditors were omitted from the mortgage, namely: The bank, two hundred dollars, for which it held four hundred dollars of said notes; Tollerton & Stetson, forty dollars; and D. M. Osborn, one hundred and eighty dollars. We do not think it can be said, "from the circumstances of the transaction," that the intention of the defendants, in the execution of this mortgage, was such as to make it, in legal effect, an assignment for the benefit of creditors. We are convinced, that it was their intention to thereby merely secure the creditors named, with the expectation of continuing in the business, and of redeeming the property from the pledge, and paying all their debts. Entertaining this view, we think the district court erred in holding said mortgage to be a general assignment for the benefit of creditors, and that the judgment of the district court should be AFFIRMED upon the appeal of David Bradley & Co., and REVERSED in both cases on the appeal of the interveners.